

FILED & ENTERED

MAY 30 2025

CLERK U.S. BANKRUPTCY COURT
Central District of California
BY fortier    DEPUTY CLERK

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – LOS ANGELES DIVISION

| | |
|---|---|
| In re:<br><br>Sam Usamah Khulusi,<br><br>Debtor(s), | Case No.: 2:22-bk-13980-VZ<br><br>Chapter: 11 |
| Abdallah Farrukh, Daad Farrukh, Bassam Omari, Kumaravel Perumalsamy, and Bassam Zahlan,<br><br>Plaintiff(s),<br><br>Vs.<br><br>Sam Usamah Khulusi<br><br>Defendant(s). | Adversary No.: 2:22-ap-01190-VZ<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW IN SUPPORT OF ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY ADJUDICATION**<br><br>Hearing date and Time<br>Date:      May 29, 2025<br>Time:      11:00 AM<br>Location: Roybal Federal Building<br>                255 E. Temple St. Ctrm 1368<br>                Los Angeles, CA 90012 |

This Court conducted a hearing (the "Hearing") on the Motion for Summary Adjudication (Docket #100, the "Motion") filed by Defendant and Debtor herein, Sam Usamah Khulusi, on April 17, 2025 concurrently with Defendant's Statement of Uncontroverted Facts and Conclusions of Law (Docket #101, the "UFCL"), the Declaration of Defendant (Docket #102, the "S. K. Declaration") and the Declaration of J'aime Williams Kerper (Docket #103, the "Kerper Declaration"). Appearances were made as stated on the record of the Hearing.

- 1

On May 8, 2025, Plaintiffs Abdallah Farrukh, Daad Farrukh, Bassam Omari, Kumaravel Perumalsamy, and Bassam Zahlan filed an Opposition to the Motion (Docket # 108, the "Opposition") together with the Declaration of Ahmed Ibrahim (Docket #108-2), the Declaration of Dr. Abdallah Farrukh (Docket #108-3, the "A. F. Declaration"), and the Declaration of Daad Farrukh (Docket #108-4, the "D. F. Declaration"), and Plaintiffs' "Response to Statement of Uncontroverted Facts and Plaintiffs' Additional Material Facts" (Docket #108-1) which is divided into two sections, Plaintiffs' Response to Statement of Uncontroverted Facts (the "RSUF") and Plaintiffs' Additional Material Facts (the "PAMF"). On April 13, 2025, Plaintiffs separately filed the "Supplemental Declaration of Ahmed Ibrahim" (Docket #112) in support of their Opposition.

On May 15, 2025, Defendant filed his "Reply in Support of Motion for Summary Adjudication" ((Docket # 120, "Motion Reply") together with the "Supplemental Declaration of J'aime Williams Kerper" (the "Supplemental Kerper Declaration").  Also on May 15, 2025, Defendant separately filed, his "Reply to and Motion to Strike Plaintiffs' Response Re 'Statement of Uncontroverted Facts and Conclusions of Law'" (Docket #121) which is divided into two sections,  (the "RSUF Reply") and (the "Motion to Strike"), "Evidentiary Objections to Declaration of Dr. Abdallah Farrukh" (Docket #122), "Evidentiary Objections to Declaration of Daad Farrukh" (Docket #123), "Evidentiary Objections to Declaration of Ahmed Ibrahim" (Docket #124), and "Evidentiary Objections to Supplemental Declaration of Ahmed Ibrahim" (Docket #125).

On May 21, 2025, Plaintiffs filed their Notice of lodgment of Original and Copies of Highlighted Deposition Transcripts (Docket #130).

On May 22, 2025, Defendant filed his "Notice of Filing Highlighted Transcripts in Support of Motion for Summary Adjudication" (Docket #131). Also on May 22, 2025, Plaintiffs filed their Response to Motion to Strike Additional Material Facts (Docket #132, the "Reply Response") and their Responses to Defendant's Evidentiary Objections to the Declarations of Dr. Abdallah Farrukh, Daad Farrukh, Ahmed Ibrahim and Supplemental Declaration of Ahmed Ibrahim (Docket #s 133, 134, 135 and 136 respectively).

Having considered the documents and evidence filed in support of and in opposition to the Motion and the arguments made on the record of the Hearing, and based on the concurrently entered "Evidentiary Rulings in support of Order Denying Plaintiffs' Motion for Summary Adjudication" (the Evidentiary Rulings), I find and conclude as follows:[1]

### STANDARD ON MOTION FOR SUMMARY JUDGMENT

Under Federal Rules of Civil Procedure ("F.R.C.P.") Rule 56, applicable in bankruptcy pursuant to Federal Rules of Bankruptcy Procedure ("F.R.B.P.") Rule 7056, a motion for summary judgment may be granted if the movant establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Under Rule 56(g), when determining a motion for summary judgement, a court may enter an order granting summary judgment on all or part of the claim. The burden is on the movant to establish that there are no genuine issues of material fact, and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). A fact is 'material' only if it might affect the outcome of the case, and a dispute is 'genuine' only if a reasonable trier of fact could resolve the issue in the non-movant's favor." *Fresno Motors, LLC v. Mercedes Benz USA, LLC*, 771 F.3d 1119, 1125 (9th Cir. 2014). In determining a motion for summary judgment, the court must view the evidence in the light most favorable to the nonmoving party and must draw all justifiable inferences in favor of the non-moving party. Id. However, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The Parties must support their positions by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact*." In re Fox Ortega Enterprises, Inc.,* 631 B.R. 425, 438 (Bankr. N.D. Cal. 2021) citing Fed.

---

[1] To the extent that any conclusions of law are included under findings of fact, they shall be deemed conclusions of law and to the extent that any findings of fact are included under conclusions of law, they shall be deemed findings of fact.

R. Civ. P. 56(c)(1)(A)–(B). "[A] moving party without the ultimate burden of persuasion at trial…may carry its initial burden of production by either of two methods. The moving party may produce evidence negating an essential element of the nonmoving party's case, or, after suitable discovery, the moving party may show that the nonmoving party does not have enough evidence of an essential element of its claim or defense to carry its ultimate burden of persuasion at trial." *Nissan Fire & Marine Ins. Co. v. Fritz Companies,* Inc., 210 F.3d 1099, 1106 (9th Cir. 2000).

As a preliminary matter, this Court notes that neither Defendant nor the Plaintiffs (together the "Parties") have fully complied with this Court's Local Bankruptcy Rules ("LBRs") pertaining to Summary Judgement Motions or the use of deposition and 341(a) meeting transcripts. The Parties' failures to satisfy the LBR concerning use of transcripts in a contested matter is addressed in the concurrently entered Evidentiary Rulings. Concerning the Parties' failures to fully with the LBR pertaining to summary judgement motions, Defendant failed to lodge the UFCL electronically via LOU concurrently with the filing of his Motion for Summary Adjudication on April 17, 2025 as required by LBR 7056-1(b)(2)(B), and Defendant did concurrently file, serve, and lodge with the Motion a separate proposed summary judgement as required by LBRs 7056-1(b)(2)(A), or as would be appropriate in this case, an order of summary adjudication. Further, on May 15, 2025, Defendant lodged the UFCL electronically via LOU but did not also lodge a separate proposed order of summary adjudication.

Plaintiffs failed to fully comply with LBR 7056-1(c)(2)(B) by failing to cite to "the particular portions" of the "pleading, affidavit, deposition, interrogatory answer, admission, or other document relied upon to establish the dispute and the existence of a genuine issue precluding summary judgment or adjudication" in their responses to Defendant's asserted uncontroverted facts and instead citing to multiple paragraphs of their PAMF, each of which in turn contains citations to Plaintiffs' offered evidence. Examples include that (1) in disputing Defendant's Fact Nos. 20 – 24, Plaintiffs cite to PAMF Nos. 181-191 which collectively reference Exhibits 16, 17, multiple pages from Exhibits 102, 103 and 106 as well as the A. Farrukh Declaration at ¶¶ 3-6 and the D. Farrukh Declaration at ¶¶ 2-5; (2) in disputing

Defendants Fact Nos. 31- 34 ad 29, Plaintiffs cite to PAMF 84-175 which collectively reference Adv. Docket No. 100, Bk. Docket Nos. 60 and 211; Exhibits 1 - 3, Exhibits 6 - 12, Exhibit 19, Exhibit 48, Exhibit 49, Exhibit 52, Exhibit 60, and numerous pages Exhibits 101, 102 103, 104 and 105 and (3) in disputing Defendant's Fact Nos. 37, 40 and 44 Plaintiffs cite to PAMF 11- 175 which in addition to citing the evidence referenced in PAMF 84-175 collectively reference Bk. Docket Nos. 16, 24, 34, 56, 63, 66, 68, 69, 74, 79, 83, 84, 86, 101, 110, 111, 119, 124, 135, 145, 155, 176, 189, 208, 214, 227, 230, 231, 232, 269, 332, 334, 338, 341, 354, 357, 364 as well as multiple pages from Exhibits 14, 27, 28 and 29; Exhibit 30, 31 and 107 – 113. What Plaintiffs have done in their RSUF, is far from what is contemplated by LBR 7056-1(c)(2)(B).

Also, in Plaintiffs' Reply Response, they assert that Defendant should have responded to the PAMF and supporting evidence, and that Defendant's failure to do so amounts to a concession that such facts are undisputed. However, Plaintiffs did not file a cross motion for summary judgment and after accounting for this Court's concurrently entered Evidentiary Rulings, most are unsupported by evidence adequate to establish the asserted fact(s).

**FINDINGS OF FACT**

| Fact No. | UNDISPUTED FACT | SUPPORTING EVIDENCE |
|---|---|---|
| 1 | On July 22, 2022 (the "Petition Date"), Sam Usamah Khulusi filed a voluntary petition under Title 11, Chapter 11 of the United States Code (the "Code"), initiating Bankruptcy Case No. 2:22-bk-13980-VZ (the "Bk Case"). | See Bankruptcy Case Docket ("Bk Case Docket") No. 1. See also UFCL ¶ 1 and RSUF ¶ 1. |
| 5 | Defendant was a retired individual in his late 60's on the Petition Date and is now 70 years old. | S. K. Declaration, ¶ 3. See also UFCL ¶ 5 and RSUF ¶ 5. |
| 6 | The Plaintiffs are prepetition litigants who are disputed creditors. | Kerper Declaration ¶¶ 3-6, and Exhibits I - L. See also UFCL ¶ 6 and RSUF ¶ 6. |
| 7 | Plaintiffs filed their original proofs of claim on December 15, 2022, and each of the Plaintiffs filed amended proofs of claim on October 10, 2023, May 14, 2024, and April 24, 2025. | See Bk Case Claims Register, Claims 13, 14, 15 and 16. |

| 9 | On October 25, 2022, Plaintiffs commenced this adversary proceeding 2:22-ap-01190-VZ (the "Adversary"), seeking relief under 11 U.S.C. §§ 523 and 727. | Adversary Docket No. 1. See also UFCL ¶ 9 and RSUF ¶ 9. |
|---|---|---|
| 10 | After multiple motions to dismiss, the Court ordered Plaintiffs to file separate adversary proceedings for their respective §523 claims, leaving only the §727 claims at issue in the Adversary in Plaintiffs Third Amended Complaint ("TAC"). | Adversary Docket Nos. 7, 32, 40 and 51. See also UFCL ¶ 10 and RSUF ¶ 10. |
| 11 | Litigation of the 523 adversaries has been stayed by Order of this Court. | Adv. No. 2:24-ap-01013-VZ, Docket No. 29; See also UFCL ¶ 11 and RSUF ¶ 11. Adv. No.: 2:24-ap-01014-VZ, Docket No.30 Adv. No.: 2:24-ap-01015-VZ, Docket No. 30 Adv. No.: 2:24-ap-01016-VZ, Docket No. 32 |
| 12 | Pursuant to this Court's "Scheduling Order following Status Conference" entered on December 5, 2024, the deadline for the parties to complete discovery is March 25, 2025, including receipt of requests for written discovery. | Adv. Docket No. 86. See also UFCL ¶ 12 and RSUF ¶ 12. |
| 13 | In the TAC, Plaintiffs allege that the Debtor knowingly and fraudulently made a false oath or account in connection with his Bk Case. | Adversary Docket No. 51. See also UFCL ¶ 13 and RSUF ¶ 13. |
| 14 | Specifically, Plaintiffs allege that the Defendant (1) failed to disclose a community property five-carat diamond ring ("Diamond Ring") in his schedules, (2) failed to disclose the transfer of a 2008 Mercedes-Benz S-Class S 550 ("Mercedes") in Item 18 of his Statement of Financial Affairs ("SOFA") which they allege occurred in the 2 years before the Petition Date, and (3) failed to disclose in item 18 of his SOFA the deed of trust (the "DOT") recorded against his residence located at 12 Rawhide Lane, Rolling Hills Estates, CA (the "Residence") and in favor of Malek Khulusi ("Malek") which occurred just shy of 2 years before the Petition Date on July 27, 2020. | Adversary Docket No. 51. See also UFCL ¶ 14 and RSUF ¶ 14. |
| 15 | Plaintiffs allege in the TAC that other false oaths may have been made. | Adversary Docket No. 51. See also UFCL ¶ 15 and RSUF ¶ 15. |

| 16 | The Mercedes was sold to Carmax for $7,600 on July 13, 2020. | S. K. Declaration ¶ 5 and Exhibit A. See also UFCL ¶ 16 and RSUF ¶ 16. |
|---|---|---|
| 17 | This was an arms-length sale to an unrelated third party, which the Debtor understands was for fair value. | S. K. Declaration ¶ 5. See also UFCL ¶ 17 and RSUF ¶ 17. |
| 18 | The transfer of the Mercedes to Carmax occurred more than 2 years before the Petition Date. | S. K. Declaration ¶ 5 and Exhibit A. See also UFCL ¶ 18 and RSUF ¶ 18. |
| 22 | In response to the Debtor's Requests for Production of Documents, Plaintiffs produced unauthenticated photos, some of which, show Layla Khulusi ("Layla") wearing an unidentified ring and all of which are undated, except one apparently dated November 14, 2014. | Kerper Decl ¶ 11 and Exhibit Q. See also UFCL ¶ 22 and RSUF ¶ 22.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 185 which in turn cites Exhibits 16, 17 and Ex. 103.<br><br>However, Exhibits 16, 17 and Ex. 103 have been excluded as evidence for the purposes of ruling on this Motion for the reasons stated in this Court's concurrently entered Evidentiary Rulings. |
| 23 | The only diamond rings that the Debtor has ever purchased for Layla are the 2 rings that he bought her prior to their 1987 wedding. One of the rings was a gold band with a small single diamond, and the other was a very thin gold band with a few tiny diamonds inserted around the band. | S. K. Declaration ¶ 6. S. K. Declaration ¶ 6. See also UFCL ¶ 23 and RSUF ¶ 23.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 181 – 191 which in turn cite Exhibits 16, 17, 102, 103, and 106 and the A. Farrukh and D. Farrukh Declarations.<br><br>Exhibits 16, 17, 102, 103, and 106 and portions of the A. Farrukh and D. Farrukh Declarations have been excluded as evidence for the purposes of ruling on this Motion for the reasons |

| | | |
|---|---|---|
| | | stated in this Court's concurrently entered Evidentiary Rulings. The portions of the Farrukh Declarations that remain in the record do not create a genuine issue as to this asserted fact. |
| 24 | The Defendant has not purchased a diamond ring for Layla during their marriage. | S. K. Declaration ¶ 7. See also UFCL ¶ 24 and RSUF ¶ 24.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 181 – 191 which in turn cite Exhibits 16, 17, 102, 103, and 106 and the A. Farrukh and D. Farrukh Declarations.<br><br>Exhibits 16, 17, 102, 103, and 106 and portions of the A. Farrukh and D. Farrukh Declarations have been excluded as evidence for the purposes of ruling on this Motion for the reasons stated in this Court's concurrently entered Evidentiary Rulings. The portions of the Farrukh Declarations that remain in the record do not create a genuine issue as to this asserted fact. |
| 25 | On or about January 31, 2006, the Defendant personally guaranteed the promissory note ("Eruces Note") issued by Eruces, Inc. ("Eruces") in favor of the Malek R. Khulusi Irrevocable Trust Dated 11/30/94 ("Malek Trust") and the Kareem Khulusi Irrevocable Trust Dated 11/30/94 ("Kareem Trust"). | S. K. Declaration ¶ 8 and Exhibit B. See also UFCL ¶ 25 and RSUF ¶ 25.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 164-175 in which Plaintiffs cite Exhibits 9, 102, 103 and 104, though no evidence is cited in support of PAMF 167. |

| | | | |
|---|---|---|---|
| | | | Exhibits 102 - 104 have been excluded as evidence for the purposes of ruling on this Motion for the reasons stated in this Court's concurrently entered Evidentiary Rulings. The portions of the Farrukh Declarations that remain in the record do not create a genuine issue as to this asserted fact.<br><br>Exhibit 9 is a copy of a document titled "Promissory Note and Guaranty Restated" dated January 31, 2006 (the "Note and Guarantee"), and it does not create a genuine issue as to this asserted fact. |
| 26 | The total amount of the Eruces Note was $4,500,000. | | S. K. Declaration ¶ 8 and Exhibit B. See also UFCL ¶ 26 and RSUF ¶ 26.<br><br>Plaintiffs do not dispute that that the document states that the note was for $4,500,000. However, Plaintiffs do dispute that the Note and Guarantee was intended to be enforced, was at arm's length or was anything other than a sham citing to PAMF 164 -175 in which Plaintiffs cite Exhibits 9, 102, 103 and 104, though no evidence is cited in support of PAMF 167.<br><br>Exhibits 102 - 104 have been excluded as evidence for the purposes of ruling on this Motion for the reasons stated in this Court's |

| | | | |
|---|---|---|---|
| | | | concurrently entered Evidentiary Rulings.<br><br>Exhibit 9 is a copy the Note and Guarantee, and it does not create a genuine issue as to this asserted fact. |
| 27 | Eruces failed to pay the obligations due under the Eruces Note and went out of business in 2016-2017. | | S. K. Declaration ¶ 9. See also UFCL ¶ 27 and RSUF ¶ 27. |
| 28 | By letter dated May 1, 2020, the Malek Trust and Kareem Trust demanded payment of the amounts due under the Defendant's guarantee of the Eruces Note from the Defendant through their counsel, Loe Law Group. | | S. K. Declaration ¶ 10 and Exhibit C. See also UFCL ¶ 28 and RSUF ¶ 28.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 136-140 and 142-145 in which Plaintiffs cite Exhibits 102 - 104 as evidence to create an issue of fact. However, Exhibits 102 - 104 have been excluded as evidence for the purposes of ruling on this Motion for the reasons stated in this Court's concurrently entered Evidentiary Rulings. |
| 29 | In an effort to resolve the dispute over the Eruces Note with the Malek Trust and the Kareem Trust, the Defendant issued a Promissory Note dated May 27, 2020 in favor of the trusts (the "Promissory Note") in the principal amount of $11,025,000. | | S. K. Declaration ¶ 11 and Exhibit D. See also UFCL ¶ 29 and RSUF ¶ 29.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 150 - 156 in which Plaintiffs cite Exhibits 12 and 103 - 104 as evidence to create an issue of fact. However, Exhibits 103 - 104 have been excluded as evidence for the purposes of ruling on this Motion for the reasons stated in this Court's concurrently entered Evidentiary Rulings. |

| | | | |
|---|---|---|---|
| | | | Exhibit 12 is a copy of the St. Ct. Complaint and it does not create a genuine issue as to this asserted fact. |
| 30 | | The Promissory Note provided that it would be secured by a $1,000,000 Deed of Trust in favor of the Malek Trust. | Exhibit D. See also UFCL ¶ 30 and RSUF ¶ 30.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 96, 100, 102, 114, 122-123, 130, 150-156, 159-162 in which Plaintiffs cite Exhibits 3, 12 48 and 103 - 104 as evidence to create an issue of fact. However, Exhibits 103 - 104 have been excluded as evidence for the purposes of ruling on this Motion for the reasons stated in this Court's concurrently entered Evidentiary Rulings.<br><br>Exhibit 3 is a copy of a deed of trust in relation to 12 Rawhide Lane in Rolling Hills Estates with a recording date of July 29, 2020 (the "July 29 DOT"). Exhibit 12 is a copy of the St. Ct. Complaint and Exhibit 48 is a copy of a "Notice of Entry of Dismissal" filed in the State Court Action on May 1, 2023 (the "St Ct Action Dismissal"). No issue of material fact is created by Exhibits 3, 12, or 48. |
| 31 | | On July 27, 2020, the Defendant and his wife, as trustees of the Khulusi Family Revocable Trust dated 10/26/1993 ("Khulusi Family Trust") executed the Note Secured By Deed of Trust with Malek Khulusi for $1,000,000 ("Malek Note"), secured by the Residence. | S. K. Declaration ¶ 11 and Exhibit E. See also UFCL ¶ 31 and RSUF ¶ 31. |

| 32 | The DOT securing the Malek Note was dated July 27, 2020 and recorded on July 29 2020, just 7 days inside the 2 years pre-petition. | S. K. Declaration ¶ 11 and Exhibit F. See also UFCL ¶ 32 and RSUF ¶ 32. |
|---|---|---|
| 33 | On July 20, 2022, the Modification ("Modification") to the DOT was recorded to correct the name of the beneficiary under the DOT from Malek Khulusi personally to Malek Khulusi, as co-trustee of the Malek Trust. | S. K. Declaration ¶ 12 and Exhibit G. See also UFCL ¶ 33 and RSUF ¶ 33.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 84-175 in which Plaintiffs cite Adv. Docket No. 100, Bk. Docket Nos. 60 and 211; Exhibits 1 - 12, 19, 48, 49, 52, 60, 101, 102 103, 104 and 105.<br><br>Exhibits 1, 4, 5, 49, 52, 60 and 101 - 105 have been excluded as evidence for the purposes of ruling on this Motion for the reasons stated in this Court's concurrently entered Evidentiary Rulings.<br><br>Adv. Docket No. 100 contains a copy of the Motion. Bk. Docket No. 60 is Defendant's amendments to the List of 20 Largest Unsecured Creditors Amended, Summary of Assets and Liabilities for Individual, Schedules (E/F) , Declaration About an Individual Debtor's Schedules, and List of Creditors filed on December 12, 2022 (the "December 12 Amended Case Documents"). Bk. Docket No. 211 contains a copy of Defendant's Amended D/S/Plan, As Modified - REDLINED VERSION filed |

by Defendant on July 12, 2024.

Exhibit 2 is a copy of a deed of trust in relation to 12 Rawhide Lane in Rolling Hills Estates with a recording date of July 27, 2020 (the "July 27 DOT"). Exhibit 3 is a copy of the July 29 DOT. Exhibit 6 is a copy of a deed of trust in relation to 12 Rawhide Lane in Rolling Hills Estates with a recording date of July 29, 2020 (the "July 20 DOT"). Exhibit 7 is a copy of Debtor's Chapter 11 bankruptcy petition, schedules, and statement of financial affairs filed on July 22, 2022, as Bk. Docket No. 1 (the "Case Initiation Documents"). Exhibit 8 is a copy of Debtor's December 12 Amended Case Documents. Exhibit 9 is a copy the Note and Guarantee. Exhibit 10 is a copy of an unsigned letter dated May 1, 2020 addressed to Sam Khulusi with no address from David Loe of the Loe Law Group. Exhibit 11 is a copy of a document titled "Promissory Note" dated May 27, 2020 (the "May 2020 Note"). Exhibit 12 is a copy of the St. Ct. Complaint. Exhibit 19 is a copy of Debtor's 1st Amended D/S/Plan and Exhibit 48 a copy of the St Ct Action Dismissal.

Nothing in Adv. Docket No. 100, Bk. Docket Nos. 60 and

| | | | |
|---|---|---|---|
| | | | 211, or Exhibits 2 - 3, 6 - 12, 19 and 48 creates a genuine issue as to Fact 33. |
| | 34 | That same day, the Defendant emailed his then bankruptcy counsel, Andrew Bisom ("Bisom"), who was preparing the Defendant's bankruptcy filing, attaching a copy of the Modification which showed the date and recording number of the DOT, and confirming the Defendant's understanding that, other than correcting the name of the beneficiary, the Modification did not in otherwise affect the Malek Note or DOT. | S. K. Declaration ¶ 13 and Exhibit H. See also UFCL ¶ 34 and RSUF ¶ 34.<br><br>Plaintiffs dispute this asserted fact again citing to PAMF 84-175. For the reasons discussed in ¶33 above, the evidence cited in PAMF 84-175 fails to create an issue of material fact. |
| | 35 | This email confirms that the date of the DOT was disclosed to Bisom by the Defendant. | Exhibit H. See also UFCL ¶ 35 and RSUF ¶ 35. |
| | 36 | When the Defendant commenced this Bk Case, he included in his schedules a debt owing to the Malek Trust as a secured debt against his Residence. | Exhibit I. See also UFCL ¶ 36 and RSUF ¶ 36. |
| | 37 | At the time that the Defendant's SOFA was prepared, the Defendant did not understand that the granting of a security interest in his Residence qualified as a transfer to be listed under SOFA Item 18. | S. K. Declaration ¶ 14. See also UFCL ¶ 37 and RSUF ¶ 37.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 11-175 in which Plaintiffs in addition to citing to the evidence referenced in PAMF 84-175 as discussed in ¶33 above, also cite Bk. Docket Nos. 16, 24, 34, 56, 63, 66, 68, 69, 74, 79, 83, 84, 86, 101, 110, 111, 119, 124, 135, 145, 155, 176, 189, 208, 214, 227, 230, 231, 232, 269, 332, 334, 338, 341, 354, 357, 364; Exhibits 4, 5, 14, 27, 28, 30, 31, 107, 108, 111, 112, 113.<br><br>Exhibits 4, 5, 14, 27, 28, 107, 108, 111, 112, 113 have been excluded as |

| | | |
|---|---|---|
| | | evidence for the purposes of ruling on this Motion for the reasons stated in this Court's concurrently entered Evidentiary Rulings.<br><br>Bk. Docket Nos. 16, 24, 34, 56, 63, 66, 68, 69, 74, 79, 83, 84, 86, 101, 110, 111, 119, 124, 135, 145, 155, 176, 189, 208, 214, 227, 230, 231, 232, 269, 332, 334, 338, 341, 354, 357, 364 consist of the Chapter 11 Monthly Operating Reports filed by Defendant in the Bk Case.<br><br>Exhibit 30 is a copy of Debtor's Chapter 11 Monthly Operating Report for the reporting period ending November 30, 2024. Bk Docket No. 338<br><br>Exhibit 31 is a copy of Wells Fargo bank statements in Defendant's name for the period covering December 12, 2019 to August 31, 2020.<br><br>Nothing in the cited evidence remaining of record after the Evidentiary Rulings, creates a genuine issue as to this asserted fact. |
| 38 | The DOT was listed in Defendant's schedules as a secured debt and was never concealed. | Exhibit I. See also UFCL ¶ 38 and RSUF ¶ 38. |
| 39 | It was never the Defendant's intention to conceal the recording of the DOT, and he specifically included a debt owing to the Malek Trust secured by the DOT in his schedules. | S. K. Declaration ¶14. See also UFCL ¶ 39 and RSUF ¶ 39.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 84-175. As discussed in ¶33 |

| | | | |
|---|---|---|---|
| | | | above, the evidence cited in PAMF 84-175 fails to create an issue of material fact. |
| | 40 | The Defendant relied on his counsel's ability to correctly advise on and correctly complete the schedules and SOFA and was unaware of any errors when he signed them. | S. K. Declaration ¶14. See also UFCL ¶ 40 and RSUF ¶ 40.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 11-175; however, nothing in the evidence cited in PAMF 11-175 remaining of record after the Evidentiary Rulings, creates a genuine issue as to this asserted fact. |
| | 41 | At the meeting of creditors, the Defendant truthfully answered questions raised by the U.S. Trustee and Plaintiffs about the DOT and stated that (1) the DOT was the result of settling with the Trusts regarding the Defendant's personal guarantee of the Eruces Note, and (2) that the DOT was recorded within the 2 years preceding the Petition Date. | S. K. Declaration ¶15. See also UFCL ¶ 41 and RSUF ¶ 41.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 2, 3, 11-14, 19, 20, 90 and 129 in which Plaintiffs cite Exhibits 31, 101, 102 and 107, all of which have been eliminated from the record for consideration of this Motion. Thus, Plaintiffs have failed to controvert Fact 41. |
| | 42 | When questioned about the modification of the DOT at the 341a meeting, the Defendant noted that no money had changed hands in connection with the modification. This was because the modification was only to correct the name of the beneficiary and is unrelated to the fact that the original DOT was issued for real consideration, i.e. to secure the Defendant's obligations under the guaranty of the Eruces Note. | S. K. Declaration ¶15. See also UFCL ¶ 42 and RSUF ¶ 42.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 92-113, 122-123, 130, 137, 139, 156, 159, 160 and 175 in which Plaintiffs cite Bk. Docket No 60, and Exhibits 1, 4, 5, 7, 8 and 101-103 and 105. |

| | | | Exhibits 1, 4, 5, and 101-103 and 105 have been eliminated from the record for consideration of this Motion and Bk. Docket No 60 consists of the December 12 Amended Case Documents, a copy of which Plaintiffs submitted as Exhibit 8 and Exhibit 7 consists of a copy of the Case Initiation Documents.<br><br>Nothing in the evidence cited in PAMF 92-113, 122-123, 130, 137, 139, 156, 159, 160 and 175 remaining of record after the Evidentiary Rulings, creates a genuine issue as to this asserted fact. |
|---|---|---|---|
| 44 | | When the Defendant signed his schedules and "SOFA" [Statement of Financial Affairs] and schedules, he was unaware of any errors in them. | S. K. Declaration ¶ 14. See also UFCL ¶ 44 and RSUF ¶ 44.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 11-175.<br><br>However, nothing in the evidence cited in PAMF 11-175 that remains of record after the Evidentiary Rulings, creates a genuine issue as to this asserted fact. See discussion in ¶ 37 above. |
| 45 | | The Defendant has never taken any steps to conceal the DOT or the date it was recorded, nor was it ever his intention to do so. | S. K. Declaration ¶ 16. See also UFCL ¶ 45 and RSUF ¶ 45.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 84-175.<br><br>However, nothing in the evidence cited in PAMF 84- |

| | | |
|---|---|---|
| | | 175 that remains of record after the Evidentiary Rulings, creates a genuine issue as to this asserted fact. See discussion in ¶ 33 above. |
| 47 | The omission of the DOT from item 18 of the SOFA was merely a misunderstanding of what needed to be included in SOFA item #18. All of the information regarding the DOT, including the date it was recorded, had been provided to Defendant's counsel who failed to include the DOT in the SOFA disclosures. | S. K. Declaration ¶ 13-14 and Exhibit H.<br><br>See also UFCL ¶ 47 and RSUF ¶ 47.<br><br>Plaintiffs dispute this asserted fact citing to PAMF 84-175.<br><br>However, nothing in the evidence cited in PAMF 84-175 that remains of record after the Evidentiary Rulings, creates a genuine issue as to this asserted fact. See discussion in ¶ 33 above. |

## CONCLUSIONS OF LAW

This Court has jurisdiction under 28 U.S.C. §§ 157, 1132 and 1334(a) over the subject matter of this proceeding because the claims asserted herein relate to a case pending under the Bankruptcy Code for the Central District of California, Los Angeles Division (the "Bankruptcy Court") and Local Rules and Orders of the United States District Court for the Central District of California governing the reference and conduct of proceedings arising under or related to cases under Title 11 of the United States Code.

Per 28 U.S.C. §§ 1408 and 1409, venue is proper in the Central District of California, Los Angeles Division, because the Bk Case is pending in this district and division.  See also Federal Rules of Bankruptcy Procedure (FRBP) 7001.

The deadline to file avoidance actions under 11 U.S.C. § 546(a) expired on November 22, 2024. See Bk. Docket No. 314.

In Plaintiffs' TAC, the sole claim for relief is a claim for denial of Defendant's discharge brought under 11 U.S.C. § 727(a)(4)(A). Plaintiffs' allegations in the TAC include, among other things, that:

(1) Defendant admitted in this 341(a) meeting that he failed to disclose in his bankruptcy petition schedules the assets of his wife, which are presumed to be community assets under California law and therefore, assets of the Bankruptcy estate,

(2) Defendant did not disclose a ring worn by his wife with a diamond or diamonds of approximately five karats, according to Defendant's wife worth more than $100,000,

(3) Defendant did not disclose the transfer of a 2008 MERCEDES-BENZ S-CLASS s 550 in Item 18 of his SOFA which asks, "Within 2 years before you filed for bankruptcy, did you sell, trade, or otherwise transfer any property to anyone, other than property transferred in the ordinary course of your business or financial affairs?," or anywhere else in the SOFA or any schedule, list or document filed as part of the bankruptcy petition,

(4) Defendant did not disclose in Item 18 the transfer of a purported security interest on his residence to his son Malek Roy Khulusi, an insider, by way of a deed of trust recorded on July 27, 2020, as to which he then recorded on July 20, 2022, a document entitled "Modification to Promissory Note and Deed of Trust/Mortgage" purportedly to correct the beneficiary name, and

(5) Plaintiffs believe that Debtor has made other knowing false oaths or accounts in connection with his bankruptcy petition including failing to disclose in the bankruptcy petition, schedules and SOFA additional material assets or transactions.

11 U.S.C. § 727(a)(4)(A) provides that "(a) The court shall grant the debtor a discharge, unless-- (4) the debtor knowingly and fraudulently, in or in connection with the case-- (A) made a false oath or account." In the Ninth Circuit, to obtain a denial of discharge under § 727(a)(4)(A), it is the objector's burden to show, by a preponderance of the evidence: "(1) the

debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1197 (9th Cir.2010).

Debtor Made No Omission or False Oath About the Mercedes

There is no omission or false oath in Defendant's schedules with reference to the Mercedes, as the sale occurred outside the 2-year period specified in the SOFA, and Plaintiffs admit as this fact in their RSUF. See S. K. Declaration ¶ 5 and Exhibit A. See also UFCL ¶ 19 and RSUF ¶ 19.

The Alleged Diamond Ring

Concerning the ring, in the Motion, Defendant argues that the undisputed facts establish that "there was no omission of a '5 carat diamond ring' from the Debtor's schedules, because there is no such community property ring, and discovery has not elicited any viable evidence of any such ring." In Plaintiffs' UFCL, Defendant asserts that Plaintiffs cannot prevail on their 11 U.S.C. § 727(a)(4)(A) claim on the basis that the Defendant failed to disclose the alleged Diamond Ring, because they cannot show by a preponderance of the evidence that there is a diamond ring in Defendant's estate.

Defendant asserts that Plaintiffs have not produced any evidence to support their contention that an alleged Diamond Ring was community property of Debtor's estate as of the Petition Date; however, the facts that Defendant has established by uncontroverted evidence merely include that (1) the photos Plaintiffs produced of Layla Khulusi are unauthenticated, and undated except one dated November 14, 2014, (2) the only diamond rings that the Debtor has ever purchased for Layla are the 2 rings that he bought her prior to their 1987 wedding, one was a gold band and a small single diamond, and the other was a very thin gold band with a few tiny diamonds inserted around the band, and (3) Debtor has not purchased a diamond ring for Layla during their marriage.

Defendant's asserted facts regarding the alleged ring are contradictory. In ¶ 20 of the UFCL, Defendant asserts that "Plaintiffs have not produced **any** evidence to support their contention that an alleged Diamond Ring was community property of Debtor's estate as of the Petition Date" (emphasis added). However, in ¶ 22 Defendant asserts that "Plaintiffs have produced unauthenticated photos of Layla wearing an unidentified ring in some of the photos."

Also, Plaintiffs filed the declarations of Dr. Abdallah Farrukh and Daad Farrukh in support of their Opposition and in testimony that was not excluded by sustained evidentiary objection, each declarant testifies that they saw Layla wear a diamond ring at a Syrian American Women's Charitable Association event in or around 2009 at the Biltmore Hotel in Los Angeles. Daad Farrukh's non-excluded testimony further establishes that she saw Layla wearing a diamond ring at other places and events between the years of 2009 and 2015.

Further, while the Motion reflects that, "[t]he Debtor has testified that there is no Diamond Ring, and he has not purchased a diamond ring (or for that matter any jewelry) for Layla during their marriage," and Defendant does testify that the only diamond rings that he "ever purchased" for Layla, are the 2 rings that he bought her prior to their 1987 wedding and that he has not purchased a diamond ring for Layla during our marriage, Defendant's testimony in his declaration does not include that "there is no diamond ring."

Based on the foregoing, there are issues of material fact regarding the existence of the alleged diamond ring and regarding whether Defendant was obligated to disclose it.

The Pre-Petition Recording of the DOT

Concerning the DOT, in the Motion, Defendant argues that, "the undisputed facts establish that "the Debtor's inadvertent omission of the fact that a deed of trust (which was disclosed) was issued within the 2 years prepetition was neither material, nor was it done knowingly or fraudulently, as Debtor fully disclosed all relevant information to his then attorney, who appears to have inadvertently omitted it from the SOFA, though the trust deed was listed in Debtor's schedules." In Plaintiffs' UFCL, Defendant asserts that Plaintiffs cannot prevail on their 11 U.S.C. § 727(a)(4)(A) claim on the basis that the Defendant "failed to disclose the pre-

petition recording of the DOT, because they cannot show by a preponderance of the evidence any knowing concealment or fraudulent intent, as Defendant disclosed the DOT and recording date to his attorney, and relied in good faith on his attorney to prepare the schedules and SOFA as required," citing *Retz v. Samson (In re Retz),* 606 F.3d 1189, 1199 (9th Cir.2010).

Defendant concedes that he omitted from item 18 in the SOFA, the DOT that was recorded against his Residence within two years of the Petition Date, and that the DOT should have been included. However, Defendant argues that the omission was not material and was not knowingly or fraudulently made.

A material fact is one that "bears a relationship to the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or to the existence and disposition of the debtor's property." *In re Khalil,* 379 B.R. 163, 173 (internal quotation and citation omitted). An omission or misstatement is material if it detrimentally affects administration of the estate. *In re Retz,* 606 F.3d 1189, 1198. "A false statement or omission may be material even in the absence of direct financial prejudice to creditors." *In re Roberts,* 331 B.R. 876, 883 (9th Cir. BAP 2005). "Even if the debtor can show that the assets were of little value or that a full and truthful answer would not have directly increased the estate assets, a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully investigate the debtor's pre-bankruptcy dealing and financial condition." Collier on Bankruptcy, ¶ 727.04 (16th 2020).

Defendant argues that his omission of the DOT from item 18 in the SOFA is not material because (1) "nothing would have happened differently in the administration of his bankruptcy estate had the transfer been included," (2) the DOT was disclosed in Defendant's schedules, (3) the DOT was granted for reasonably equivalent value, as partial security for the debt Defendant owed the Malek Trust under his guaranty of the Eruces Note, and subsequent Promissory Note, thus, could not have been avoided, and (4) the omission of the DOT from the SOFA did not adversely affect the trustee's or creditors' ability to discover other assets or to fully investigate the Defendant's pre-bankruptcy dealing and financial condition because the

U.S. Trustee and Plaintiffs' counsel each questioned Defendant about the DOT at the 341a meeting.

Plaintiffs argue that the fact that the Debtor disclosed the existence of the DOT does not cure the fact that the timing of when the DOT was granted was not disclosed in the SOFA and that the omission of the DOT is material because (1) no value was paid, (2) the underlying debt was barred by statute of limitations, and (3) the trust's claim is a sham, that Debtor paid a lawyer to bring a strawman lawsuit on behalf of the trusts against himself which was dismissed, that Malek could identify no consideration supporting either the July 2020 or July 2022 deed of trust and had no idea the trust even existed or that there was any debt that his father owed to his trust. In Plaintiffs' Opposition, to support of Plaintiffs' argument that the DOT is material Plaintiff cite PAMF 79 – 175 in which Plaintiffs cite as evidence Bk Docket No. 60, 100, 211 and Exhibits 1-11, 19, 60, 101-105.  For the reasons discussed in ¶33 above, the cited evidence fails to create an genuine issue of material fact.

"A debtor acts knowingly if he or she acts deliberately and consciously." *In re Retz,* 606 F.3d 1189, 1198 (9th Cir. 2010)(internal citations and quotations omitted).

Defendant argues that Plaintiff did not omit the DOT from the SOFA knowingly and that the evidence shows that "he provided all of the relevant information regarding the DOT to [his then attorney], Bisom, who, for unknown reasons, but most likely an oversight, did not include the DOT transfer in the SOFA." Further, in his declaration, Defendant testifies that at the time that his SOFA was prepared, he "did not understand that the granting of a security interest in his Residence qualified as a transfer of property that needed to be listed under SOFA Item 18."

Plaintiffs argue that the e-mail exchange between Defendant and his attorney, Bisom, proves nothing because (1) it doesn't show Defendant sending the July 2020 deed of trust to Bisom, (2) it doesn't include any instruction from Defendant to make sure the deed is listed on the schedules and SOFA, (3) Defendant does not describe what legal advice he was relying upon, and the redactions made in the emails from Bisom, preclude understanding the context of the exchange or what, if any, advice Bisom was providing to Defendant, and (4) "the advice of counsel is not a defense when the erroneous information should have been evident to the

debtor. A debtor cannot, merely by playing ostrich and burying his head deeply enough in the sand, disclaim all responsibility for statements which he has made under oath." *In re Retz,* 606 F.3d 1189, 1199 (9th Cir. 2010) (internal citation and quotations omitted). Citing *VIA Techs., Inc. v. SONICBlue Claims, LLC,* 782 F. Supp. 2d 843, 867 (N.D. Cal. 2011), in a footnote of the Opposition, Plaintiffs argue that because the Defendant has disclosed a substantial part of the email communications, he has waived privilege and should be ordered to produce the full unredacted email exchange. To the extent Plaintiffs wish to seek such relief, they must do so by filing a separate motion.

Here, Defendant has testified that he provided his attorney with information related to the DOT, and did not understand that the granting of a security interest in his Residence qualified as a transfer of property that needed to be listed under SOFA Item 18. There is no evidence in the record before this Court that counters Defendant's testimony. Further, the facts of the *Retz* case cited by Plaintiffs regarding a debtor's reliance on counsel differ significantly from the facts before this Court. In *Retz,* the debtor signed incomplete Schedules and SOFA knowing that they were not true and correct and without having read them before signing them. Omissions from the debtor's schedules in Retz included "valuable watches, a bank account, a 1984 Cadillac, a 2002 Audi purchased through TCI, and the sale of a helicopter and hangar and significant omissions of income. Also, as of the time of trial in *Retz*, the debtor had still not adequately amended his SOFA to include all required information. *In re Retz,* 606 F.3d 1189, 1197 (9th Cir. 2010). Here, Debtor provided information regarding the DOT to his attorney and the debt related to the DOT was listed as one of the Defendant's 20 largest unsecured claims at ¶ 12 and at ¶ 2.4 in Debtor's Schedule D. The evidence before the Court in considering this Motion does not establish multiple, obvious omissions from Defendant's petition, schedules or SOFA. Also, Defendant amended his SOFA to include the details regarding the DOT on May 13, 2004; however, it does not appear that Debtor has yet filed an amended Schedule D to include the date the debt related to the DOT was incurred, though the Debtor itself was disclosed. See Bk. Docket Nos. 1, 187.

"[A] debtor acts with fraudulent intent when: (1) the debtor makes a misrepresentation; (2) that at the time he or she knew was false; and (3) with the intention and purpose of deceiving creditors." "A debtor acts fraudulently if at the time he or she made the representation he or she knew they were false and made them with the intention and purpose of deceiving creditors." *In re Retz,* 606 F.3d 1189, 1198-99 (internal quotation and citations omitted). "Intent is usually proven by circumstantial evidence or by inferences drawn from the debtor's conduct." Id. at 1199 (citations omitted).

Here, Defendant has testified that he "relied in good faith on his counsel's ability to advise on and correctly complete the schedule and SOFA," and was "unaware of any errors" when he signed them. Defendant further testifies that he "has never taken any steps to conceal the DOT or the date it was recorded," nor was his intent to do so. There is no evidence in the record before the Court in considering this Motion that counters Debtor's testimony.

Based on the foregoing, there are no issues of material fact that Plaintiffs cannot prevail on their 11 U.S.C. § 727(a)(4)(A) claim on the basis that the Defendant "failed to disclose the pre-petition recording of the DOT."

###

Date: May 30, 2025

Vincent P. Zurzolo
United States Bankruptcy Judge